

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2005

# Murphy v. Bancroft Constr Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2929

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Murphy v. Bancroft Constr Co" (2005). *2005 Decisions.* Paper 1244.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1244

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2929

THOMAS A. MURPHY,

Appellant

v.

BANCROFT CONSTRUCTION COMPANY

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 02-cv-00453)
District Judge: Honorable Sue L. Robinson

Submitted Under Third Circuit LAR 34.1(a)
April 4, 2005

Before: BARRY, AMBRO and COWEN, Circuit Judges

(Filed  May 5, 2005)

OPINION

AMBRO, Circuit Judge

Plaintiff Thomas Murphy appeals the District Court's judgment in favor of

defendant Bancroft Construction Company ("Bancroft").  For the reasons that follow, we

affirm.

## I.     Jurisdiction and Standard of Review

The District Court had jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1367.  We have appellate jurisdiction under 28 U.S.C. § 1291.

Because this appeal implicates three orders entered at different stages in the proceedings, it involves three standards of review.  First, the District Court granted Bancroft's motion for judgment as to Murphy's claim under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962 *et seq*.  Our Court's review of a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is plenary.  *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002).  Like the District Court, we "view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff," and the motion should not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law."  *Id*.

Second, the District Court entered summary judgment against Murphy on his claims under Delaware law.  We "exercise plenary review over a district court's grant of summary judgment and apply the same standard as the district court, *i.e.*, whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff."  *Debiec v. Cabot Corp.*, 352 F.3d 117, 128 n.3 (3d Cir. 2003).

Third, in a motion for reconsideration, Murphy sought to assert an age discrimination claim.  Plenary review also extends to any legal conclusion underlying the

2

District Court's decision to deny a motion for reconsideration, though the decision on the motion lies within the sound discretion of the Court. *See Le v. Univ. of Pa.*, 321 F.3d 403, 405-06 (3d Cir. 2003).

## II.    Analysis

Because we write solely for the parties, we do not recite the facts underlying Murphy's claims or the case's procedural history. He has raised four issues on appeal, and we address each in turn.

### A.

Murphy alleges that he was discharged by his employer because of his efforts to divulge Bancroft's wrongful actions, including, *inter alia*, Bancroft's alleged overcharges and fraudulent billing practices in connection with a construction project for the Capital School District ("District"). Although under the employment at-will doctrine an at-will employee like Murphy may be dismissed at any time without cause, Delaware courts recognize an implied covenant of good faith and fair dealing as tempering this general doctrinal rule. *See Lord v. Souder*, 748 A.2d 393, 401 (Del. 2000). Murphy argues that his discharge was in retaliation for his "whistleblowing" actions, rendering his discharge a violation of public policy, and thus neither in good faith nor fair.

Much of Murphy's argument is aimed at establishing that Bancroft was involved in illegal activities. These arguments are unpersuasive because, among other reasons, they are not supported by the results of audits—initiated after Murphy's discharge—by the

3

Office of Auditor of Accounts for the State of Delaware and the Delaware Department of Justice. Further, Murphy's complaints appear to have been aimed at Bancroft's internal business practices, which, absent illegality, generally fail to implicate the type of public interest required for his claim to succeed. *See E.I. Dupont de Nemours & Co. v. Pressman*, 679 A.2d 436, 442 (Del. 1996).

Moreover, Murphy's allegations with respect to his purported whistleblowing activities are insufficient to establish that he was discharged because of those activities. Murphy's comments to one of the members of the District's board did not specify wrongdoing, but instead urged that a board member "keep asking questions." Although he may have made more specific allegations of wrongdoing to an attorney who represented the District in contract negotiations with Bancroft, Murphy has not pointed to any evidence that Bancroft was aware of his discussions with the attorney.

In view of these factual deficiencies and the narrowness of the exceptions to the employment at-will doctrine, the District Court did not err in entering summary judgment against Murphy on his claim for breach of the implied covenant of good faith and fair dealing. *See Conneen v. MBNA Am. Bank, N.A.,* 334 F.3d 318, 334 (3d Cir. 2003) (explaining that Delaware courts have been reluctant to recognize a broad application of the implied covenant of good faith and fair dealing out of concern that the covenant "could swallow the doctrine of employment at will"); *Lord*, 748 A.2d at 401-03 (discussing exceptions to at-will employment doctrine as "narrow and discrete" and

4

interpreting them to "prevent further erosion" of the doctrine).

**B.**

Murphy argues that two Bancroft employees made comments to the District's board that resulted in the District hiring another individual for a construction management position. This, he alleges, is intentional interference with a prospective business relationship. To prevail under Delaware law, Murphy must show: (1) the reasonable probability of a business opportunity; (2) Bancroft's intentional interference with that opportunity; (3) proximate causation; and (4) damages. *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. Super. Ct. 1981).

Looking to the first element, as the District Court explains, Murphy did not receive an offer of employment from the District. Instead, he was involved in "informal conversations" with the District's superintendent and the president of the District's school board. Neither testified that assurances were given to Murphy that he would be hired, which in any event could only have occurred after public announcement and a formal application process. In addition, there is no indication in the record that the other members of the District's board were inclined to hire Murphy. Thus the District Court did not err in concluding that Murphy could not have had a reasonable expectation of employment; hence the first element was not satisfied. *See Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001) (describing the first element of the tort of intentional interference as involving a reasonable expectation of receiving a tangible benefit).

## C.

As the District Court explained in ruling on Bancroft's motion for judgment on the pleadings, Murphy's complaint failed to indicate what section of RICO Bancroft allegedly violated. The Court also explained that even if Murphy's pleading deficiencies with respect to the RICO allegations could be overcome in an amended complaint, his claim would still require dismissal because it was based on non-cognizable injuries.

In alleging damages, Murphy has taken the position that he was injured in his capacity to work as a result of Bancroft's actions. He argues he is not attempting to recover for his emotional pain, but rather is seeking to recover his losses to his earning capacity caused by his depression. Moreover, Murphy submits that at trial he would attempt to connect his depression to Bancroft's wrongful acts.

RICO creates a civil cause of action for "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "In ordinary usage, 'injury to business or property' does not denote physical or emotional harm to a *person*. Indeed, the Supreme Court has declared that Congress's limitation of recovery to business or property injury 'retains restrictive significance. It would for example exclude personal injuries suffered.'" *Genty v. RTC*, 937 F.2d 899, 918 (3d Cir. 1991) (emphasis in original) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). Murphy attempts to evade this problem by asserting that many personal injuries are accompanied by lost earning capacity. However, he cites no authority and concedes this suggested path

6

is "somewhat novel." Murphy's argument hardly persuades, thus rendering his RICO claim untenable and warranting judgment on the pleadings with respect to this claim.

**D.**

Murphy waited until after the District Court had granted Bancroft's motion for summary judgment on his state law claims (and well after the Court had granted the motion for judgment on the pleadings as to the RICO claim) to seek to assert an age discrimination claim, notwithstanding the fact that—as the Court indicated—he could have sought to add the age discrimination claim to this action as early as August 2002. Murphy argues that the District Court's denial of his request for leave to amend (raised in his motion for reconsideration) rested on an erroneous conclusion that he was precluded from raising this claim.

The doctrine of claim preclusion is central to a court's objective of conclusive resolution of disputes and seeks to avoid the expense and vexation of multiple lawsuits while conserving judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions. *Equal Employment Opportunity Comm'n v. U.S. Steel Corp.*, 921 F.2d 489, 492 (3d Cir. 1990) (quotation omitted). More simply, its purpose is to avoid piecemeal litigation of claims arising from the same events. *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999). Thus, where there is "no escaping from the fact that [a plaintiff] has relied on different legal theories to seek redress from the [same defendant] for a single course of wrongful conduct . . . [by]

7

splitting a cause of action," the doctrine of claim preclusion will prohibit the prosecution of the second lawsuit. *Id*. at 195.

The District Court properly applied that doctrine here. The assertions Murphy sought to raise in an amended complaint involve the same facts and the same parties as those in his initial complaint. Moreover, raising a new legal theory does not make the second case different for purposes of claim preclusion. *See Churchill*, 183 F.3d at 195 (explaining that where new allegations are made, but the thrust of the two complaints remains practically identical, claim preclusion applies); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990) (explaining that claim preclusion prohibits reexamination not only of matters actually decided in a prior case, but also those that parties might have, but did not, assert in that action). Murphy's age discrimination claim focused on an allegedly age-hostile comment that he first complained of in November 2001 in connection with his separation from his employer—the same separation that has been the focus of the suit before us. Furthermore, Murphy's initial complaint included allegations that he was subjected to "age-disparaging" remarks and harassment. In these circumstances, the District Court hardly erred by applying the doctrine of claim preclusion to deny Murphy's request for leave to amend his complaint to add an age discrimination claim.

\* \* \* \* \*

Accordingly, we affirm the District Court's judgment.

8